**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EDWARD T. BRILL, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| EDWARD J. MARANDOLA, ET AL., | : | |
| | : | |
| Defendants | : | NO. 06-2023 |

<u>**MEMORANDUM AND ORDER**</u>

PRATTER, J.                                                                JANUARY 10, 2008

Plaintiff Edward T. Brill sued Defendants Imaging Sciences International, Inc. ("ISI"),

Edward J. Marandola, Alan Keim, Arun B. Singh, Henry Tancredi, John Tancredi (collectively,

"Defendants")[1] for damages arising from alleged breaches of agreements to make Mr. Brill an ISI

shareholder.  Mr. Brill has moved to exclude the proposed testimony of Glenn Newman, a

witness retained by the Defendants "to evaluate the Plaintiff's claim for damages, and propose an

alternative analysis, if appropriate."  (Pl. Mot. Ex. A, Newman Report at 1.)  The Defendants

oppose the Motion.  For the reasons discussed more fully below, the Court will grant the Motion

in part and deny it in part.

**FACTUAL BACKGROUND**

Messrs. Marandola, Keim, Singh, Henry Tancredi and John Tancredi (collectively, the

"shareholder/director defendants") are all shareholders and directors of ISI.  ISI engages in the

manufacture, sale and servicing of a dental implant imaging machine and related services and

products.  Mr. Brill has alleged the following facts:

In early 2003, ISI was failing.  The shareholder/director defendants asked Mr. Brill to

---

[1] Per stipulation, Defendants Barbara Keim, Arlene Tancredi, Elizabeth Tancredi, and
Stephanie Tancredi-Mandell were voluntarily dismissed.

provide consulting services to turn the business around.  The shareholder/director defendants and Mr. Brill entered into an agreement by which ISI would pay Mr. Brill $5,000 in cash and issue to him a 1% equity interest in ISI for every five months of consulting services rendered (0.2% per month, or $5,000 in equity based upon valuation of the ISI at $2.5 million).  Between October 30, 2003 and November 2, 2003, the shareholder/director defendants and Mr. Brill executed a Shareholder Agreement ("November 2003 Agreement") memorializing Brill's compensation arrangement.  It is undisputed that Mr. Brill never actually received any shares pursuant to the November 2003 Agreement.

Mr. Brill alleges that he subsequently entered into three oral agreements with one or more of the shareholder/director defendants whereby he became entitled to an even greater number of shares of ISI stock.  First, in early 2004, Mr. Brill and the shareholder/director defendants agreed that the monthly payments would increase to $7,500 in cash and $7,500, or 0.3%, in equity per month ("Early 2004 Agreement").  Second, around April 2004, Mr. Marandola allegedly agreed that ISI would compensate Mr. Brill with 10% of the sale price of a particular piece of medical equipment, or roughly 1.2% of the shares of the company ("April 2004 Agreement").  Third, in late 2003, the shareholder/director defendants and Mr. Brill allegedly orally agreed to a "Co-equal Shareholder Agreement," in which the shareholder/director defendants agreed to increase Mr. Brill's shareholder interest to be co-equal with that of the other shareholders (16.67% of ISI shares).  It is undisputed, however, that ISI never issued Mr. Brill any shares pursuant to any of these oral agreements.

In late 2005, Mr. Marandola allegedly informed Mr. Brill that he would not receive any distributions because Mr. Brill was not a recognized shareholder with an equity interest in ISI.

2

**PROCEDURAL HISTORY**

The Complaint originally included the following claims: Court I (Inspection of Books and Records pursuant to 8 Del. Code § 220); Count II (RICO Violation pursuant to 18 U.S.C. § 1962(c)); Count III (RICO Conspiracy pursuant to 18 U.S.C. § 1962(d)); Count IV (Common Law Fraud); Count V (Tortious Interference with Business Relations); Count VI (Civil Conspiracy); Count VII (Breach of Fiduciary Duty); Count VIII (Aiding and Abetting Breach of Fiduciary Duty); Count IX (Derivative Claim on Behalf of ISI); Count X (Breach of Contract), to the extent the claim is based on oral agreements; Count XI (Promissory Estoppel – Alternative Claim); Count XII (Unjust Enrichment); Count XIII (Conversion); Count XIV (Accounting); and Count XV (Specific Performance).

The Defendants moved to dismiss all counts pursuant to Rules 9 and 12(b)(6) of the Federal Rules of Civil Procedure.  The parties subsequently stipulated to the dismissal of Counts II, III, V, VI and VIII, thereby eliminating the RICO claims and the claims against the family-member defendants.

After a lengthy period of fact discovery, the parties each retained and proffered experts on the issue of damages.  Mr. Brill now moves to exclude the proposed testimony of Mr. Newman, the Defendants' expert.

**LEGAL STANDARD**

Federal Rule of Evidence 702, which governs the admissibility of expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact
> to understand the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may testify thereto
> in the form of an opinion or otherwise, if (1) the testimony is based upon

3

sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The Federal Rules of Evidence "embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact," and Rule 702, in particular, has a "liberal policy of admissibility." Kannankeril v. Terminix Int'l, 128 F.3d 802, 806 (3d Cir. 1997). Nonetheless, the Supreme Court expects trial judges to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow, 509 U.S. 579, 589 (1993). The "gatekeeping" function of the district court applies not only to scientific testimony, but also to "testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999).

Rule 702 mandates "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit." Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000). The party offering the expert testimony has the burden of establishing that the proffered testimony meets each of the three requirements by a preponderance of the evidence. Paldillas v. Stork-Gamco, Inc., 186 F.3d 412, 418 (3d Cir. 1999).

The first requirement, whether the witness is qualified as an expert, has been interpreted liberally to encompass "a broad range of knowledge, skills, and training." In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 741 (3d Cir. 1994). At a minimum, a proffered expert witness "must possess skill or knowledge greater than the average layman." Elcock, 233 F.3d at 741.

The second prong requires the expert's testimony to be reliable. Elcock, 233 F.3d at 741. The Rule 702 requirement that an expert testify to *scientific knowledge* "means that the expert's

opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." <u>In re Paoli</u>, 35 F.3d at 742 (<u>quoting</u> <u>Daubert</u>, 509 U.S. at 589-90).

The final prong, an aspect of relevancy, requires that the expert testimony "fit" the case by assisting the trier of fact. <u>Oddi v. Ford Motor Co.</u>, 234 F.3d 136, 145 (3d Cir. 2000). "Fit" refers to "the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case." <u>In re Paoli</u>, 35 F.3d at 743. As the Supreme Court explained, "'[f]it' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." <u>Daubert</u>, 509 U.S. at 591. Thus, "even if an expert's proposed testimony constitutes scientific knowledge, his or her testimony will be excluded if it is not scientific knowledge *for purposes of the case.*" <u>In re Paoli</u>, 35 F.3d at 743.

**DISCUSSION**

The Defendants have retained Glenn Newman of the Parente Randolph firm "to evaluate the Plaintiff's claim for damages, and propose an alternative analysis, if appropriate." (Ex. A, Newman Report at 1.) In his October 8, 2007 report, Mr. Newman sets forth his view of the appropriate amount of a damages award in the event the jury finds that Mr. Brill has some equity interest in ISI. Mr. Newman concludes that if Mr. Brill prevailed on his claim to an equity interest in ISI, he would be entitled to damages of between $65,000 and $156,000, and potentially an additional $30,000. (<u>Id.</u> at 7.)

Mr. Brill moves to exclude Mr. Newman's testimony on the grounds that Mr. Newman lacks the requisite qualifications, and that the report is not reliable and lacks "fit," i.e., is not

relevant.  The Defendants respond that Mr. Newman's report incorporates permissible factual assumptions that are based on the record.

Based on his own evaluation and interpretation of the documents and deposition testimony, Mr. Newman concludes that Mr. Brill performed consulting services for ISI for a period of 13 months, and values Mr. Brill's alleged earned equity interest at 0.2% per month for that 13-month period, resulting in a total of 2.6% equity interest in ISI.  The agreed value of ISI in October/November 2003 was $2.5 million; in May 2004 it was $6 million.  Thus, if calculated as of October/November 2003, the value of Mr. Brill's equity interest in ISI would be $65,000. If calculated in May 2004, it would be $156,000.[2]  Mr. Newman also concludes that if Mr. Brill is owed a brokerage fee for the Keystone transaction, any such fee would be cash, not equity, in the amount of $30,000.[3]

Although Mr. Brill challenges the admissibility of Mr. Newman's proposed testimony on the basis of all three Daubert requirements, the central dispute in the pending motion boils down to the lengthy explanations of Mr. Newman's factual findings and assumptions.

Federal courts applying the standards established by Rule 702 and 703 have permitted

---

[2] Although these calculations may appear to be relatively simple, "an expert can be employed if his testimony will be helpful to the trier of fact in understanding evidence that is simply difficult, [though] not beyond ordinary understanding."  Total Control, Inc. v. Danaher Corp., 338 F. Supp. 2d 566 (E.D. Pa. 2004) (quoting United States v. Downing, 753 F.2d 1224, 1229 (3d Cir. 1985)).

[3] In contrast, Mr. Brill's expert, Howard Fielstein, assumes (without detailed explanation) that Mr. Brill should have received an equity interest equal to 4.6%, and that Mr. Brill would have continued to hold that equity interest through 2007, when ISI was purchased by KDS. (Fielstein Report at 2.)  Mr. Fielstein calculates Mr. Brill's damages not by calculating the value of ISI and Mr. Brill's percentage thereof, but by calculating the amount of distributions Mr. Brill as a shareholder should have received from 2005 to 2007, and the amount of Mr. Brill's proportionate share in the residual assets of ISI following the sale of ISI's principal business assets on January 2, 2007.  (Id. at 1.)

damages experts to make the assumptions of fact necessary to render a sound opinion, so long as such assumptions have a reasonable basis in the available record and are disclosed to the finder of fact.  As one court has observed, "[e]xperts are expected to make inferences and state opinions and they are granted wide latitude in determining what data is needed to reach a conclusion. Questions as to the sufficiency of an expert's factual basis are generally left to the jury." JMJ Enters. v. Via Veneto Italian Ice, No. 97-0652, 1998 WL 175888, at *6 (E.D. Pa. Apr. 15, 1998); see also Margolies v. McCleary, Inc., 447 F.3d 1115, 1121 (8th Cir. 2006) (citation omitted) (noting that "the factual bases of an expert's opinion generally relates to the weight a jury ought to accord that opinion").

Courts have admitted expert testimony that incorporates or relies on an evaluation or interpretation of the record on the grounds that it is the role of the expert to "assist the trier of fact to understand the facts already in the record." Total Control, Inc. v. Danaher Corp., 338 F. Supp. 2d 566, 570 (E.D. Pa. 2004) (citing Weinstein's Federal Evidence § 702.03[1]).  This evaluation of the record includes reliance on information provided by the party who hired the expert; experts are not required to "eschew reliance on a [party's] account of factual events that the experts themselves did not observe." Tormenia v. First Investors Realty Co., 251 F.3d 128, 135 (3d Cir. 2000); see also Total Control, 338 F. Supp. 2d at 570 (admitting testimony of plaintiff's damages expert in breach of contract action where the expert relied on business records provided by the plaintiff); Robert Billet Promotions, Inc. v. IMI Cornelius, Inc., No. 95-1376, 1998 WL 151806, at *5 (E.D. Pa. Apr. 1, 1998) (denying motion to exclude testimony of damages expert who "interviewed [the client], and reviewed documents produced in the course of this litigation").

That said, an expert's testimony nonetheless "must have some connection to existing facts," and "expert testimony that ignores existing data and is based on speculation is inadmissible." JMJ Enters., 1998 WL 175888, at *6.  While the Daubert/Paoli analysis "does not preclude testimony merely because it may be based upon an assumption, the supporting assumption must be sufficiently grounded in sound methodology and reasoning to allow the conclusion it supports to clear the reliability hurdle." In re TMI Litigation, 193 F.3d 613, 677 (3d Cir. 1999).  The analysis of an expert's factual basis under Rules 702 and 703 is similar to the analysis of methodology. Id.  "[W]hen a trial judge analyzes whether an expert's data is of a type reasonably relied on by experts in the field, he or she should assess whether there are good grounds to rely on this data to draw the conclusion reached by the expert." In re Paoli, 35 F.3d at 749.

In Tormenia v. First Investors Realty Co., Inc., 251 F.3d 128 (3d Cir. 2000), the Third Circuit Court of Appeals held that the factual bases upon which the plaintiff's expert relied were not "so unreliable that his testimony should have been deemed inadmissible" where the expert relied on the plaintiff's account of her accident, on the defendant's interrogatory responses concerning a maintenance schedule, and on the expert's prior experience with similar mechanical devices. Id. at 135.  That court noted that "[w]hether through contrary expert testimony or cross-examination, [defendants] possessed ample available means to challenge perceived weaknesses in assumptions underlying [the expert's] testimony." Id.

Similarly, in Robert Billet Promotions, Inc. v. IMI Cornelius, Inc., No. 95-1376, 1998 WL 151806 (E.D. Pa. Apr. 1, 1998), the plaintiff's damages expert based his report on interviews with the plaintiffs, documents produced in the course of the litigation, industry documents, a

damages treatise and accounting rules for measuring damages.  Id. at *3.  The court held that the expert's testimony was admissible even though his calculations were based on a draft contract that the plaintiff conceded was unenforceable because "the Plaintiff's litigation position [wa]s that the parties' oral contract contains substantially the same terms as those enumerated in the [unenforceable] draft."  Id.  The expert also assumed that under the terms of the draft agreement, the defendant would have renewed the agreement for a second term.  Even though "[n]othing in the text of the unenforceable draft agreement suggests an obligation to do so," the court deferred to the expert's reliance on a damages treatise in making this assumption.  Id. at *4.  Finally, in computing consequential damages, the expert "ultimately reli[ed] on discussions he had with [the plaintiff]."  Id. at *5.  Over the defense objections that the expert was "merely 'parroting the Plaintiff's claimed damages,'" the court held that the expert's assumptions were "sufficiently straight-forward that the proper remedy [wa]s in cross-examination rather than exclusion."  Id.

    In contrast, in McCrink v. Peoples Benefit Life Insurance Company, No. 04-1068, 2005 WL 730688 (E.D. Pa. Mar. 29, 2005), the court held that an expert's report was inadmissible because it was "littered with impermissible legal conclusions on the issue of contract construction, such as finding that the term 'operating' is ambiguous, that the Court should adopt the definition proffered by plaintiffs, and that defendant has not met its legal burden of proof concerning the motorcycle exclusion."  Id. at *4.  The court went on to hold that the expert's "construction of the insurance policy, although based on his understanding of insurance law, which itself is the subject of a well-respected treatise, is not the proper subject of an expert report" because the expert's "testimony on the issue of contract construction, and hence, coverage, would not assist the fact-finder in understanding a technical issue."  Id.  Indeed, as the

court noted, such an opinion is not reliable because it is not based upon scientific methodology, but rather upon the expert's "subjective interpretation of insurance case law and the application of this case law to the instant dispute."  Id.  See also Gallatin Fuels, Inc. v. Westchester Fire Ins. Co., 410 F. Supp. 2d 417, 420-21 (E.D. Pa. 2006) (holding inadmissible testimony as to expert's opinion on the application of the insurance policy to plaintiff's loss because expert's "opinions on the issue of contract construction would not assist the jury in understanding coverage, are based solely on [expert's] subjective interpretation of the policy language, and are impermissible legal conclusions").

Here, Mr. Newman's written report and proposed testimony fall somewhere in between Tormenia and Robert Billet Promotions, and McCrink and Gallatin Fuels.  For example, Mr. Newman did not take into account the alleged 0.1 percent per month increase in Mr. Brill's pro-rata share of monthly earned equity, even though Mr. Brill testified to parallel increases in cash and equity earnings.  Citing the Defendants' deposition testimony to the contrary, Mr. Newman states in the unmistakable tone of an advocate, "[w]e have not seen support for Brill's claim that the additional equity would be earned as well."  (See Newman Report at 11.)[4]

Similarly, Mr. Newman concludes that "if it is found that Brill is owed a brokerage fee, we see no basis that this fee would be due Brill in the form of ISI equity."  (Id. at 12.)  Mr. Newman also states his view that "Brill's claim of an increased pro-rata share of equity due to a separate consulting arrangement, and his claim of a brokerage fee due in the form of equity lack sufficient bases."  (Id. at 12.)  Likewise, to determine the date of valuation of Mr. Brill's

---

[4] Mr. Newman notes, however, that "[i]f the Court finds the $2,500 worth of equity was also earned beginning in December 2003, this would translate to an additional 0.01 percent equity earned per month per the four to six remaining pay periods Brill consulted for ISI." (Newman Report at 11 n.39.)

damages, Mr. Newman engages in an extensive interpretation of the Shareholder's Agreement and its buy-out provisions, ultimately stating that "the Purchase Price of Brill's equity interest would be his pro-rata share of the Agreed Value as of May/June 2004." (Id. at 13-19.)  In addition, Mr. Newman's criticism of Plaintiff's expert's report includes the following observation: "Because many of the alleged intended agreements in this matter were oral, we consider the deposition testimony in this matter key.  The Plaintiff's Expert Report fails to consider any deposition testimony and many of the related exhibits thereto." (Newman Report at 23.)

It is a fundamental reality that an expert must have some data or factual basis upon which to opine.  Ideally, a damages expert could present a calculation of damages for every foreseeable interpretation of the record and factual finding.  However, where, as here, the relevant raw data and the calculations to be performed vary significantly (e.g., the number of months Mr. Brill worked for ISI and what percent equity interest he earned during that time, etc.), it is more practical for each expert to base his calculations on a particular factual scenario, presumably as posited by or on behalf of the party offering the expert.  This is precisely what Mr. Newman did, and it is precisely what Mr. Brill's expert also appears to have done.  To the extent these experts present their factual findings as hypothetical (i.e., *if* propositions A, B and C are found to be true, then the damages amount to X), then testimony regarding their assumptions is admissible.  However, an expert may not state such hypothetical propositions as objective facts, unless such facts are clearly undisputed.

The objectionable portion of Mr. Newman's report is not his calculation of damages; rather, it is his extensive, subjective analysis of the evidence in the record and his factual

"findings" and legal conclusions based on those subjective interpretations of that evidence.  The inadmissibility of the stated legal rationale for Mr. Newman's factual assumptions does not render his opinion as to damages inadmissible, however.  Rather, Mr. Newman's opinion as to the *amount* of damages owed Mr. Brill in the event he is found to have an equity interest in ISI is admissible, as are Mr. Newman's factual assumptions relating to Mr. Brill's earned equity interest because they are reasonably based on the evidence in the record.  Mr. Newman's assumptions, selections from the record and conclusions are, of course, subject to cross-examination.

To summarize, Mr. Newman's extensive interpretation of the relevant legal documents and suggested credibility determinations as presently included in his written report are not admissible because they usurp the fact-finding role of the jury and distract more than they aid. The role of a damages expert is to calculate hypothetical damages given an assumed set of facts; so long as those assumed facts are reasonably based on the evidence in the record, such assumptions are permissible.  Mr. Newman will not be permitted to explain any purported legal rationale for his opinions.

**CONCLUSION**

For the foregoing reasons, the Motion to Exclude is granted in part and denied in part. An Order consistent with this Memorandum follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD T. BRILL,** | **:** | **CIVIL ACTION** |
| | **:** | |
| **Plaintiff,** | **:** | |
| **v.** | **:** | |
| | **:** | |
| **EDWARD J. MARANDOLA, ET AL.,** | **:** | |
| | **:** | |
| **Defendants** | **:** | **NO. 06-2023** |

## O R D E R

AND NOW, this 10th day of January, 2008, upon consideration of the Plaintiff's Motion to Exclude Defendants' Proposed Expert Testimony (Docket Nos. 57-58), the Defendants' response in opposition thereto (Docket No. 64) and the Plaintiff's reply (Docket No. 68), it is hereby ORDERED that the Motion is GRANTED IN PART AND DENIED IN PART as outlined in the accompanying Memorandum.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge